CASE 53—PETITION ORDINARY—MARCH 29.

# Miller vs. Thornton.

#### APPEAL FROM JEFFERSON CIRCUIT COURT.

A part owner of a steamboat leased the privilege of keeping a bar in the boat, giving the lessee a receipt for $1,000, " being amount in full for privilege of cabin bar of steamer R. J. Ward for the ensuing season." In the first month of the season the boat was attached for debt of the owners, and so disposed of as to deprive the lessee of the further enjoyment of his privilege. *Held*—That the lessor was responsible to the lessee for the damages sustained by the latter, $1,000, as found by the jury.

RIPLEY & THOMPSON, for appellant, cited 2 *Smith's Lead. Cas.*, 435.

H. POPE for appellee.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Silas F. Miller, part owner of the steamboat Robert J. Ward, employed in transportation from Louisville to New Orleans during the running season, which, for boats of that size, was generally from about the 1st of December to the 1st of June, on the 18th of November, 1859, leased to S. C. Thornton, for $1,000 then paid, the privilege of keeping a bar in said boat. The consideration was paid for Thornton by Schroeder & Son, engaged in the liquor trade in Louisville, who took the following receipt:

" Received, Louisville, November 18, 1859, of J. H. Schroeder & Son, one thousand dollars, being amount in full for privilege of cabin bar of steamer R. J. Ward for the ensuing season.

"SILAS F. MILLER, *for S. B. R. J. Ward and owners ;*"

and, on that receipt, Schroeder & Son made the following assignment: "For value received, we transfer the benefit of the within to S. C. Thornton.

"J. H. SCHROEDER & SON."

Thornton, having refunded the money so paid for him, and supplied the bar with liquors, &c., went with the boat about the 1st of December, 1859, her first trip to Orleans, for "the ensuing season." But, during that month, the boat was attached for a debt of the owners, and was so disposed of as to

deprive Thornton of the further enjoyment of his purchased privilege.

For that deprivation and consequent failure of consideration, Thornton brought this action against Miller to recover damages. Miller resisted the recovery on the ground that he refused to guarantee that the boat should run during the season, and that Thornton, therefore, risked all contingencies, and paid $1,000 for the chances.

On that issue the jury found for the plaintiff $1,000 in damages, and the court, having overruled a motion for a new trial, rendered judgment for the sum so assessed.

Miller, as appellant, complains that the evidence did not authorize the verdict, and also, that the circuit court erred in withholding instructions moved by his counsel.

The evidence sustains the foregoing statement, and nothing either more or less ; and it equally sustains the overrulings of instructions, if the appellant's construction of the contract be wrong. Whether that construction is right or wrong, is, therefore, the decisive question.

There can be no doubt that the lease was for the usual running season. Then, what was it that Miller refused to guarantee, and what did that refusal import? His only witness to the oral contract of lease, says that he refused to guarantee that "the boat would run all the season;" and that it was mutually understood that Thornton "was to take all risks, short or long *season.*" And the captain of the boat testified that he understood that a *season* closed when either the navigable water or the *business of the boat* failed.

Schroeder testified, that when the appellant signed the foregoing contract, " he never intimated that plaintiff was to run the risk of the boat *being stopped* before the season. If any intimation to that effect had been made, he would not have paid the money."

Now, the running season undoubtedly means the usual period of safe and convenient running, which must be either longer or shorter, according to the accidental condition of the river. And·a refusal, in the language of appellant's first witness, to guarantee that "the boat would run all the season,"

Miller vs. Thornton.

clearly implies that a non-guarantee only against the accidents incident to the navigation during the *season*, and also incidental accidents to the boat, which the owners could not by proper diligence prevent, was contemplated by the parties; and this deduction is corroborated by the same witness, when he testified that the appellee was " to take all risks—long or short *season* "—importing that he was to risk the duration of the season as depending on the aforesaid contingencies. But Schroeder's testimony can leave no room for rational doubt on this subject.

Surely no rational man would give $1,000 for such a privilege, if he understood that the owners could hold the money and still not run the boat at all, or stop the running in a month, or whenever they might choose to do so, although, as proved in this case, the running " season " in 1859–'60 continued for at least eight months. And the proof shows, beyond controversy, that the Captain was mistaken when he said that the " season " was only so long as the owners chose to run the boat.

Therefore, the refusal to guarantee, as proved in this case, has no effect on the written lease of the bar privilege " for the ensuing *season*." And those terms obviously import the usual season, dependent only on the inevitable accidents hereinbefore suggested.

On this conclusion the verdict was authorized by the evidence, and there was no error in overruling instructions, all founded on the appellant's assumed interpretation of the contract. The sequestration of the boat, and its removal from its accustomed and covenanted service, could not be deemed an inevitable accident, but must be ascribed to the voluntary fault of the owners; and, therefore, in no sense of the lease closed or curtailed the " season."

Wherefore, the judgment of the circuit court is affirmed.